IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICK R. MCMAHON,

  Plaintiff,

 v.

PIER 39 LTD PARTNERSHIP, et al,

  Defendant.

No. C 03-00251 CRB

**MEMORANDUM & ORDER**

  The parties in the instant action have now been through thirteen lawsuits relating to the same underlying facts. Now before the Court are defendants' motion to dismiss, defendants' motion for sanctions, and plaintiff's motion for leave to file a third amended complaint. Having reviewed the memoranda submitted by the parties, and having had the benefit of oral argument, the Court GRANTS defendants' motions and DENIES plaintiff's motion.

## BACKGROUND

  McMahon owns a 63-foot vessel called the "Gallant Knight," which he has berthed at defendants' marina, Pier 39, since 1978. In 1984, McMahon entered a fifty-year lease with Pier 39's managing agent, Bay Marina Management Inc. ("BMMI"), for the use of a berth at Pier 39, and at the same time entered a month-to-month lease for a smaller berth. McMahon operated his business--Executive Yacht Charter--out of the larger berth. In 1990 McMahon

desired to expand his business beyond private charters to include lunch and dinner cruises. McMahon alleges that BMMI refused to permit him to expand his business, and at the same time BMMI expressed its desire to turn over McMahon's prime berth to a competitor, apparently McMahon's ex-wife. BMMI allegedly offered McMahon a "back alley" location in exchange. McMahon declined to give up his berth and a lengthy dispute has ensued.

McMahon alleges that Pier 39 and BMMI did not allow him to operate a commercial charter service from his dock slip. McMahon further alleges that defendants pursued a course of hostile actions designed to force defendant to vacate his berth. These actions allegedly included a complete failure to maintain the berth and common areas as required by the sublease. There was also a dispute over the signs that McMahon was permitted to post. McMahon stopped paying rent on the berth and in August of 1992, Pier 39 filed a foreclosure action. The berth was sold at a sheriff's lien sale on January 15, 2002. McMahon has also challenged the validity of that sale.

The result of the parties' interactions has been over 15 years of litigation between plaintiff and defendants over two general issues: (1) the alleged breach of contract of the sublease for the berth, including allegations that defendants did not adequately care for plaintiff's vessel and the dock; and (2) the defendant's alleged actions to prevent plaintiff from operating a commercial charter service from the dock slip.

Set forth below is a review of the litigation history between these parties.

Actions One and Two

In 1988 and 1991, Pier 39 filed small claims actions against plaintiff in San Francisco Municipal Court for unpaid fees. Pier 39 won both times, and plaintiff paid the judgments.

Action Three

Plaintiff continued to refuse to pay his fees. In 1992, Pier 39 brought an action against plaintiff seeking further unpaid fees and a foreclosure of plaintiff's leasehold interest in the boat slip. Plaintiff filed a cross-complaint seeking damages based on Pier 39's refusal to allow him to operate a commercial charter service from his slip. The matter went to trial in San Francisco Superior Court. The court found that Pier 39's foreclosure action was

2

barred under the "one form of action rule" of California Code of Civil Procedure section 726(a). The Court of Appeals later reversed the decision and granted Pier 39 judgment in the amount of fees due. The trial court granted Pier 39's motion for nonsuit on plaintiff's cross-complaint

Action Four

In August 1997, plaintiff filed a complaint against Pier 39 *in pro per* in the San Francisco Superior Court ("case 988588") seeking damages and injunctive relief. The operative facts of plaintiff's complaint were the same as those raised in his cross-complaint.

The court sustained general demurrers to four of plaintiff's causes of actions without leave to amend, leaving two causes of actions.

Shortly before trial, Pier 39 filed a motion in limine. After the court granted the motion in part, the parties agreed to a settlement. Later, however, plaintiff refused to sign the settlement agreement and moved the court for relief from the settlement. Pier 39 moved to enforce the settlement. The court enforced the settlement and granted Pier 39's motion to enter judgment. The court also ordered plaintiff to pay Pier 39's attorneys' fees because the motion to set aside the settlement was frivolous and filed in bad faith.

Action Five

In December 1997, while case 988588 was still pending, plaintiff filed another action in the San Francisco Superior Court ("case 9916490") against Pier 39 *in pro per*. The trial court dismissed all of the claims, except for one, because they were resolved by the settlement agreement in case 988588. As to the remaining claim for damage to plaintiff's vessel, Pier 39 moved for summary judgment, and the court granted it.

Appeal of Action Four and Five

Plaintiff filed separate appeals from both of these state court judgments. The Court of Appeals consolidated the actions and affirmed the rulings in their entirety.

//
//
//

Action Six

In March 2000, plaintiff filed, *in pro per*, a motion for injunctive and declaratory relief and for an equitable lien against Pier 39 in the Bankruptcy Court. The court denied the motion.

Action Seven

A month after the court denied plaintiff's motion in Action Six, plaintiff filed against Pier 39 in the Bankruptcy Court again. The court granted Pier 39's motion for abstention and dismissed the adversary proceeding.

Action Eight

In February of 2000, plaintiff shifted his attack to the federal courts and filed an action naming employees of Bay Marina Management, Inc. and Pier 39, and an attorney for the two companies as defendants (Case No. C-00-0616 CRB). This time, plaintiff alleged that defendants had failed to turn over material documents in Action Five, which in turn caused plaintiff to lose the summary judgment. This Court dismissed the action on grounds of issue preclusion.

Action Nine

Before this Court issued its decision, plaintiff filed yet another suit in the Northern District of California (Case No. C-00-1479 CRB). Plaintiff alleged substantially similar claims as all of his previous actions. This Court issued an Order to Show Cause why the complaint should not be dismissed on the grounds of res judicata, and plaintiff later voluntarily dismissed the complaint.

Action Ten

Plaintiff then took the same complaint from Action Nine and filed it in Santa Clara County Superior Court. The Santa Clara court entered an order to change the venue back to San Francisco. The San Francisco Superior Court then issued an order declaring plaintiff a vexatious litigant, requiring him to get permission of the court before filing any further suits against Pier 39 and to post a bond of $50,000.00 before proceeding with that or any other actions.

Action Eleven

      Plaintiff then filed yet another suit in the Northern District of California (Case No. C-01-1125 CRB). He repeated the same claims as before, except this time, he added a federal antitrust claim. This Court dismissed the action for failure to state an antitrust claim, and held that even if such claim did exist, it would be barred by the statute of limitations. The Court also found that there was no diversity jurisdiction and refused to exercise supplemental jurisdiction over any state law claims.

Action Twelve

      In August of 2001, plaintiff filed another suit in the Northern District of California (Case No. C-01-3247 CRB). Again, plaintiff made the same claims concerning the damage to his vessel, Pier 39's refusal to allow him to operate a commercial business, and defendants' fraudulent activities in the past cases. He also asked this Court to vacate the previous state court judgments against him and grant him a new trial. This case was voluntarily dismissed by plaintiff. The Court ordered McMahon to pay the defendants $5,920 in attorney's fees based on Rule 11 violations. At oral argument, plaintiff represented to the Court that he would not, either *in pro per* or through an attorney, file any further law suits in the Northern District of California based on the actions of defendants up through the day of oral argument. See Transcript of Hearing, January 25, 2002 at 9:9-12:13. Based on this representation, the Court denied defendants motion to have plaintiff declared as a vexatious litigant under Rule 11 or Title 28 U.S.C. section 1651(a).

Action Thirteen:  Present Action

      On January 17, 2003, just less than one-year from his commitment to the Court that he would not file another suit based on the same facts, plaintiff filed the present action. Plaintiff alleged twelve causes of action, eleven of which are clearly the same as his previous claims, and one of which, if not related to the previous claims, fails to state a claim on which relief may be granted.

//

//

5

**DISCUSSION**

**I.  Motion to Dismiss**

**A.  Plaintiff's Causes of Action**

Plaintiff's causes of action fall into two general categories: (1) the merits and procedures of the Sheriff's lien sale of McMahon's berth, and (2) the breach of the sublease contract. Each of these causes of action is substantially similar to claims already adjudicated, and is factually related to the events prior to the Court's colloquy with McMahon where he ensured the Court that he would not file any further suits against defendants based on these actions.

The principle of res judicata, also known as claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating all issues connected with the action that were or could have been raised in that action. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998). The doctrine is applicable whenever there is: (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties. Owens v. Kaiser Foundation Health Plan, 244 F.3d 708, 713 (9th Cir. 2001) (citing Blonder-Tongue Laboratories v. Univ. of Ill. Foundation, 402 U.S. 313, 323-24 (1974)). A voluntary dismissal with prejudice, even one based on an agreed or stipulated judgment, operates as an adjudication on the merits. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001); see Baker v. Internal Revenue Service, 74 F.3d 906, 910 (9th Cir. 1996).

All of Plaintiff's claims except for the eleventh cause of action for gross negligence regarding the sunken ship are identical to claims plaintiff made in prior adjudications. The claims have received final judgments on the merits and the parties are identical. Therefore, plaintiff is precluded from relitigating these claims, and defendant's motion to dismiss these claims is granted.

**B.  Eleventh Cause of Action: Gross Negligence**

The eleventh cause of action for "Gross Negligence" alleges that "the defendants allowed plaintiffs vessel to fully sink in June 2002, causing the vessel to be rendered a total

loss and further causing the plaintiff to incur the salvage costs to raise and dispose of his 63' vessel the Gallant Knight."

In the Court's January 2002 agreement with McMahon, he agreed not to file a suit based on anything that had happened up through the day of oral arguments. The Court explicitly stated that he could still sue based on things that happened after January 25, 2002. Therefore, the eleventh cause of action does not appear to be covered by McMahon's agreement.

Plaintiff's negligence claim is asserted against only two of the defendants, Pier 39, and BMMI. While it is not entirely clear, it appears that McMahon is alleging that Pier 39 and BMMI allowed his boat to sink without rendering assistance. He does not explicitly state that either defendant took any affirmative action to damage his boat.

Defendants argue that the negligence claim should be dismissed because plaintiff has failed to state a claim. They argue that plaintiff has not alleged that the defendants did anything to cause the boat to sink, and they had no affirmative duty to act to rescue McMahon's boat from sinking.

To sustain a negligence claim under California law a plaintiff must establish a duty, a breach of that duty, causation, and damages. Paz v. State of California, 994 P.2d 975, 980 (Cal. 2000). The issue of whether a defendant owes a plaintiff a duty of care is a question of law for the court. Id. at 979. In general, in the absence of a statute or a special relationship or circumstance, a person is under no duty to protect another from peril which is not of his or her own making. Id. at 980 (citing Williams v. State of California, 664 P.2d 137 (Cal. 1983)).

Plaintiff does not allege that defendants caused the peril to his ship; rather, plaintiff alleges that defendants failed to protect his ship from sinking. This is a particular type of negligence that involves nonfeasance, rather than misfeasance. Therefore, to establish that defendants had a duty to act, i.e., a duty to rescue plaintiff's ship, plaintiff must establish that there was either a statute creating such a duty, or that there was a special relationship between the parties that created this duty.

Here, plaintiff has established neither a special relationship between the parties nor a statutory duty to act. While plaintiff contests the sale of his dock slip, that issue has been resolved, and plaintiff is precluded from contesting the validity of the sale. There is no landlord-tenant relationship between the parties. Even as defendant's former tenant, under California Civil Code section 1986, if plaintiff's property (the ship) was remaining on the premises after the termination of his tenancy, defendant is not liable for "any loss not caused by his deliberate or negligent act." Cal. Civ. § 1986. Again, plaintiff has not alleged that defendants took deliberate action to sink his ship, and he has failed to establish that they had a duty to rescue necessary to find negligence.

California Civil Code section 1714(a) provides:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

Under section 1714(a), every person has a statutory duty to use ordinary care or skill in the management of his or her property. However, this statute does not create an affirmative duty to act to rescue plaintiff's ship, it merely requires defendants to manage their property with ordinary care and skill. Plaintiff's allegation that defendants allowed his ship to sink is not an assertion that defendants failed to manage their property with ordinary care and skill. He must first establish that they had a duty to take an affirmative step to protect the ship. The ship was not defendants' property, and the management of defendants' property did not cause the ship to sink. Therefore, plaintiff has not alleged that the management of the property caused the damage to the ship. Whether or not plaintiff's ship was lawfully at the dock slip, Section 1714(a) does not encompass an affirmative duty for defendants to rescue plaintiff's ship absent a special relationship between the parties.

Moreover, plaintiff's argument that he was in adverse possession of the dock slip, and not a trespasser is without merit. To have a valid claim for adverse possession, plaintiff must establish that he possessed the property without the permission of the defendants for a period of five years. See Cal. Civ. Code § 1007; Cal. Code of Civ. Proc. §§ 321, 322. Here, plaintiff

8

was originally under a valid lease, and has not been claiming a right of title for five years since he was legally in possession of the property.

In sum, plaintiff has failed to establish that defendants had an affirmative duty to rescue his ship from sinking. Plaintiff's eleventh cause of action for gross negligence, therefore, fails to state a claim upon which relief may be granted. The Court GRANTS defendants' motion to dismiss the eleventh cause of action for gross negligence.

## II.   Motion for Sanctions and to Declare Plaintiff a Vexatious Litigant

### A.   Rule 11 Sanctions

Defendants assert that plaintiff's conduct in bringing this lawsuit is sanctionable under Rule 11. Defendants seek an award of attorney's fees. Rule 11 provides:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
> (1) it is not being presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support, or, if specially so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specially so identified are reasonable based on a lack of information, or belief.

The test for whether Rule 11 is violated does not require a finding of subjective bad faith by the attorney or unrepresented party. Zaldivar v. City of Los Angeles, 780 F.2d 823, 829 (9th Cir. 1986); see also G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003). Thus, counsel can no longer avoid "the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." Smith v. Ricks, 31 F.3d 1478, 1488 (9th Cir. 1994). In this case, Rule 11 sanctions are warranted because the case was filed for an improper purpose. In re Grantham Brothers, 922 F.2d 1438, 1441 (9th Cir. 1991); Fed. Rules Civ. Proc. Rule 11(b)(1).

"Without question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." Zaldivar, 780 F.2d at 832. The Ninth

1  Circuit further elaborated that to sustain a claim of harassment on the grounds of successive
2  filings, the parties must be the same in the successive claim, and there must be a clear
3  indication that the proposition urged in the repeat claim was resolved in the earlier one. Id. at
4  834.

5  In the present case, based on plaintiff's duplicative filings against the same defendants
6  on similar issues, plaintiff's actions constitute harassment under Rule 11. The parties in
7  these suits have not changed. Plaintiff's claims in the course of this litigation have remained
8  largely unchanged. The Court has dismissed the present complaint because it was barred by
9  the doctrine of res judicata.

10 Plaintiff has made numerous attempts to raise novel theories in each successive
11 action.[1] However, at bottom, plaintiff has been merely restating the same underlying claims
12 in several subsequent lawsuits. The San Francisco Superior Court rejected these claims in
13 two separate cases: numbers 988588 and 991640. The California appellate courts rejected
14 these claims. In short, it is absolutely clear that the propositions urged in the present action
15 have been resolved in previous cases. Zaldivar, 780 F.2d at 834. Plaintiff's filings were
16 filed for an improper purpose of harassing the defendants, therefore, they constitute a Rule
17 11 violation.

18 While Rule 11 should perhaps be applied more cautiously where, as here, plaintiff
19 represents himself, the Court is satisfied that the violations in this case warrant the sanction
20 imposed. The Court hereby finds that plaintiff violated Rule 11 by filing for an improper
21 purpose.

22 **B.   Vexatious Litigant**

23 Defendants have requested that the Court declare plaintiff a vexatious litigant. They
24 argue that plaintiff has already fully litigated the issues relating to his interactions with

---

26 [1] In plaintiff's eighth suit against Pier 39 and Bay Marina Management, Inc. (U.S.D.C. Case No. C-00-0616 CRB), he claimed spoliation of evidence; in plaintiff's ninth suit against the same defendants
27 (U.S.D.C. Case No. C-00-1479 CRB), he claimed tortious breach of contract, fraud and deceit, breach of covenant of good faith; in plaintiff's eleventh suit against the same defendants (U.S.D.C. Case No.
28 C-01-1125 CRB), he claimed antitrust; in plaintiff's twelve suit against the same defendants (U.S.D.C. Case No. C-01-3247, plaintiff asked for equitable relief from judgment.

10

1  defendants, and that the current suit is duplicative, frivolous and wasteful. Accordingly, they
2  urge the Court to label plaintiff a "vexatious litigant" in order to prevent further unnecessary
3  litigation in this matter.

4        The All Writs Act, 28 U.S.C. § 1651, vests federal courts with the discretion to enjoin
5  certain litigants from engaging in wasteful litigation. Clinton v. United States., 297 F.2d 899
6  (9th Cir. 1961). The courts may exercise their discretion to prevent litigants from subjecting
7  others to "repeated, baseless and vexatious suits at law on some particular subject matter."
8  Id. at 901 (quoting First State Bank v. Chicago R.I. & P.R. Co., 63 F.2d 585 (8th Cir. 1933)).
9  Under the statute, a court may restrict litigants with abusive and lengthy histories from
10 submitting future filing of actions or papers provided that it: (1) gives the litigant an
11 opportunity to oppose the order before it is entered; (2) creates an adequate record for
12 review; (3) makes substantive findings as to the frivolous or harassing nature of the litigant's
13 actions; and (4) drafts a sufficiently detailed order. De Long v. Hennessey, 912 F.2d 1144,
14 1145-48 (9th Cir. 1990).

15       In this case, plaintiff appears to be unsatisfied with the outcome of his previous suits,
16 and is determined to pursue frivolous actions until his cause is redeemed. Plaintiff and
17 defendants have already been involved in thirteen lawsuits regarding the same issues.
18 Accordingly, defendants' content that the only effective means of deterring plaintiff's
19 continued filing of unnecessary litigation is by declaring him a vexatious litigant.

20       Defendants have requested that the Court declare plaintiff a vexatious litigant on three
21 previous occasions. The Court has repeatedly denied those requests in the hope that plaintiff
22 would cease filing improper and frivolous claims. Unfortunately, plaintiff has not stopped
23 this behavior, and shows every indication that he intends to continue these actions.

24       Most recently, on June 18, 2003, defendants moved in the present action for plaintiff
25 to be declared a vexatious litigant, and filed a proposed order on August 20, 2003. The Court
26 finds that plaintiff has had more than ample opportunity to oppose this declaration and
27 proposed order. Plaintiff's responses to defendants' repeated motions to have him declared a
28 vexatious litigant have failed to establish a basis for the Court's denying such a motion. In

11

fact, plaintiff virtually fails to address defendants' allegations or otherwise oppose defendants' request on the merits.

The Court finds that the parties have been parties to a series of civil actions concerning plaintiff's rights under a sublease agreement he entered into with Pier 39. As outlined about, the Court finds that McMahon has named the defendants, including Pier 39, BMMI, and the City and County of San Francisco (collectively "defendants") in at least thirteen civil actions, five of which have been before this Court, and all of which surround the same events.

The Court has reviewed the history of these actions. The Court finds that while some of the original actions may have been justified, many of them are a rehash of issues and facts that have previously been fully litigated and were not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law. By continually repeating allegations that have already been decided against him, the Court finds that plaintiff has used the state and federal court to harass the defendants. According to defendants, McMahon's civil actions against Pier 39 have cost defendants over $100,000 in attorneys' fees and costs.

At a hearing before this Court on January 25, 2002, plaintiff represented to the Court that he would never again file an action against defendants arising out of any facts existing at the date of the hearing. In consideration of that assurance, the Court refrained from entering an order then declaring plaintiff a vexatious litigant.

The Court finds that in filing the present action, plaintiff has breached his representation to the Court, and violated clear principles of claim preclusion. All of the counts in plaintiff's present action have either been already litigated, waived, or which fail to state a claim upon which relief may be granted.

The Court further finds that based on the evidence submitted, plaintiff is not likely to stop filing actions against defendants unless he is appropriately enjoined. The Court finds that it has previously tried several other measures short of declaring plaintiff a vexatious litigant in order to prevent plaintiff's harassment of defendants, including Rule 11 sanctions

1 and verbal warnings. However, the Court finds that such efforts have failed to deter
2 plaintiff's actions.

3     The Court hereby finds that the requirements of De Long, 912 F.2d at 1145-48,
4 necessary to declare plaintiff a vexatious litigant have been met. The Court will enter a
5 separate order declaring plaintiff a vexatious litigant.

**III.   Motion for Leave to File an Amended Complaint**

7     Plaintiff has filed a motion for leave to file a third amended complaint. Plaintiff's
8 proposed amended complaint again raises the same issues that have been dismissed or
9 otherwise disposed of in prior suits. Additionally, plaintiff's proposed amended complaint
10 seeks to add three new defendants to the case, two of whom are defendants' attorneys in this
11 action. Plaintiff is claiming "conspiracy to commit fraud, actual fraud," and obstruction of
12 justice in violation of Racketeer Influenced and Corrupt Organizations Act (i.e., the "RICO
13 Act") against these defendants based on the same factual incidents contained in his previous
14 suits. Based on the Court's dismissal of plaintiff's second amended complaint in its entirety,
15 and its decision to impose sanctions and declare plaintiff a vexatious litigant, the Court
16 denies plaintiff's motion for leave to amend.[2]

## CONCLUSION

18     For the foregoing reasons, the Court GRANTS defendants' motion to dismiss
19 plaintiff's complaint in its entirety. The Court further GRANTS defendants' motion for Rule
20 11 sanctions, and GRANTS defendants' motion to declare plaintiff a vexatious litigant.
21 Finally, the Court DENIES plaintiff's motion for leave to file an amended complaint.

22     In order to determine the appropriate amount of sanctions to impose, the Court directs
23 defendants to submit a declaration detailing the attorney's fees and costs that have been
24 expended in defense of this action by December 12, 2003. Plaintiff shall have until
25 December 19, 2003 to submit an opposition.
26 //

---

28     [2]Plaintiff has also moved for sanctions against defendants. The Court denies plaintiff's motion because it is without merit.

13

**IT IS SO ORDERED.**

Dated: December 5, 2003

/s/
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE